IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

RICHARD HENRY OWENS, JR.

       Plaintiff,           JURY DEMANDED

       Civil No: 1:23CV43

v.

GUARANTEED RATE MORTGAGE, N.A.,
SERVE: Corporation Service Company, Registered Agent
    100 Shockoe Slip Floor 2
    Richmond, VA 23219-4100

and

SERVICEMAC, LLC,
SERVE: Corporate Creations Network Inc., Registered Agent
    425 W. Washington St., Ste 4
    Suffolk, VA 23434-5320

and

DOVENMUEHLE MORTGAGE, INC.,
SERVE: CT Corporation Services, Registered Agent
    4701 Cox Rd., Ste. 285
    Glen Allen, VA 23060-6808

       Defendants.

## COMPLAINT

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343.

2. This Court has supplemental jurisdiction over plaintiff's pendent state claims pursuant to 28 U.S.C. §1367.

3. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 et seq.

4. This Court has jurisdiction over Plaintiff's claims pursuant to 12 U.S.C. §2605 for violations of the Real Estate Settlement Procedures Act (RESPA) and pursuant to 15 U.S.C. § 1692k(d) for violations of the Fair Debt Collections Practices Act (FDCPA).

5. Venue is proper in this District because the acts and transactions occurred here and the Plaintiff resides here.

## PRELIMINARY STATEMENT

6. This action is brought by the Plaintiff, Robert Owens, Jr., against the mortgage company that services a mortgage on his home, Guaranteed Rate, Guaranteed Rate c/o ServiceMac, and Dovenmuehle Mortgage, Inc.

7. Plaintiff, along with his wife, after falling upon hard times, filed a Chapter 13 Bankruptcy and successfully completed that Bankruptcy, making all plan payments in a timely manner.  The Defendants Guaranteed Rate, Dovenmuehle Mortgage, Inc, and ServiceMac, have refused to properly apply payments received from the Chapter 13 Bankruptcy Trustee and began reporting to the Plaintiff that they were behind on their mortgage immediately after the Bankruptcy case was closed.  This, despite acknowledging to the Chapter 13 Trustee at the time the case was closed that the mortgage was current.  Defendants Guaranteed Rate, Dovenmuehle, and ServiceMac have also refused to properly apply payments received from Plaintiff, conduct a proper investigation into the account and provide requested information, and as a result have failed to follow servicing guidelines; namely, failure to apply payments, failure to credit payments as of the date of receipt, failure to accept payments, "Written Qualified Request" requirements, "Notice of Error" requirements.  As a result, Defendant has violated multiple mortgage servicer provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2602, 2605, et seq., on multiple occasions, and Plaintiff is entitled to recovery pursuant to 12 U.S.C. §2605(f) for each of those violations, including costs and reasonable attorney's fees.  In addition, Defendants actions have resulted in an egregious breach of contract that warrants the imposition of a punitive damage award.  Finally, Defendants ServiceMac and Dovenmuehle Mortgage, Inc., have violated provisions of the Fair Debt Collection Practices Act (FDCPA) by attempting to collect amounts they are not entitled to collect.  Plaintiffs are entitled to recovery of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PARTIES

1. Plaintiff Richard H. Owens, Jr., (hereinafter "Plaintiff") is a natural person who resides in the Town of Marion, Virginia, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

2. Defendants Guaranteed Rate, Inc., ServiceMac, LLC., and Dovenmuehle Mortgage, Inc. (hereinafter referred to as "Defendant Guaranteed Rate, Defendant ServiceMac, and Defendant Dovenmuehle", or "Guaranteed Rate, ServiceMac, or Dovenmuehle" or, collectively, as "Defendants") are "loan servicers" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. §2602(1) and 12 U.S.C. §2605(i)(2).

3. Defendants ServiceMac, LLC and Dovenmuehle Mortgage, Inc. are both considered a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), since the account was not current when those two companies took over servicing of the mortgage account.

## FACTUAL ALLEGATIONS

4. On or about October 5, 2016, Plaintiff borrowed $70,808.00 for the purchase of their home in Marion, VA from Stearns Lending, LLC. The Note signed by the Plaintiff was secured by a mortgage on his primary residence.

5. On or about July 28, 2017, Plaintiff filed a Chapter 13 Bankruptcy. Plaintiff's Chapter 13 Bankruptcy Plan included his monthly mortgage payment in the amount of $432.25 and mortgage arrears in the amount of $3,309.03 with a gap claim in the amount of $888.57 to be disbursed by the Chapter 13 Trustee and paid throughout the term of his Chapter 13 Bankruptcy Plan.

6. On May 5, 2022, Stearns Lending, LLC. c/o LoanCare, LLC., transferred the mortgage servicing to Guaranteed Rate, Inc. c/o Devenuehle Mortgage, Inc. and filed a Notice of Transfer with the Chapter 13 Trustee. Chapter 13 Trustee submitted payments from June 2022 through September 1, 2022, to Guaranteed Rate, as directed.

7. The Chapter 13 Trustee submitted a Final Report and Account showing all monthly payments to Stearns Lending and Guaranteed Rate, Inc. had been submitted appropriately.

8. The Chapter 13 Trustee filed a Notice of Final Cure Payment on September 2, 2022 and Defendant Guaranteed Rate, Inc., filed a Response to Final Cure Payment on September 3, 2022, which agreed all payments were current.

9. Plaintiff was advised to start making regular monthly mortgage payment to Guaranteed Rate, Inc. beginning in October 2022. Plaintiff sent the October 01, 2022, monthly mortgage payment in the amount of $425.25 to Guaranteed Rate, Inc., as advised on September 30, 2022.

10. Despite the acknowledgement to the Chapter 13 Trustee that all mortgage payments and fees were current as of September 2022, the Plaintiff began receiving statements from Guaranteed Rate, Inc. in June of 2022 asking for them to pay more than their monthly mortgage payment amount and indicating that there were past due amounts.  These statements continued.  For example, a mortgage statement provided in August of 2022 by Guaranteed Rate shows the total mortgage payment due of $1,260.20, and showing a "past unpaid amount" of $827.95.  These alleged past due amounts had previously been paid by the Chapter 13 Trustee in Plaintiff and his wife's Chapter 13 bankruptcy, per the final cure payment and response from Defendant Guaranteed Rate.

11. Defendant, Guaranteed Rate, Inc., on October 17, 2022, mailed Notice of Servicing Transfer to Plaintiff advising transfer from Guaranteed Rate, Inc. c/o Dovenmuehle Mortgage Inc. to Guaranteed Rate, Inc., c/o ServiceMac, LLC., beginning with the November 1, 2022, monthly mortgage payment.  Plaintiff made the November 01, 2022, monthly mortgage payment in the amount of $432.25 on October 31, 2022, to Guaranteed Rate, Inc. c/o ServiceMac, LLC.

12. Plaintiff was to resume making his monthly mortgage payments in October 2022 after the closing of his Chapter 13 Bankruptcy.  Plaintiff continued to make payments towards his mortgage at the monthly mortgage rate of $432.25.

13. Upon Plaintiff's Bankruptcy closing in October 2022, Defendant Guaranteed Rate immediately began misapplying payments, not crediting payments submitted by the Chapter 13 Trustee during Plaintiff's bankruptcy in violation of United Bankruptcy Code 3002.1, RESPA 12 U.S.C. §1024.35 et seq., 12 U.S.C. §1026.36 et, seq., this, after they filed a Response acknowledging that all payments were made through September 2022 and Plaintiff was current.

14. Defendant Guaranteed Rate's October monthly mortgage statement dated October 17, 2022, advised Plaintiff had a total payment amount of $1,255.47 which included a past due amount of $823.22 for unpaid balances for August, September, and October 2022.

15. Defendant Guaranteed Rate sent mortgage statement dated September 16, 2022, to Plaintiff showing a total payment due of $1,255.47, which included past due balances for July, 2022, August 2022 and September 2022.  Plaintiff was still in his Chapter 13 bankruptcy and Defendant Guaranteed had filed a Response to Final Cure Payment 14 days prior advising Plaintiff was current on his mortgage.

16. Defendant Guaranteed Rate's November monthly mortgage statement, dated November 16, 2022, advised Plaintiff had a total payment amount due of $1,255.47, which included a past due amount of $832.22 for unpaid balances for September, October, and November 2022.

17. Defendant Guaranteed Rate's December monthly mortgage statement dated December 16, 2022, advised Plaintiff had a total payment due of $1,687.72, which included a past due amount of $1,255.47 for September, October, November, and December 2022. Plaintiff's October 2022 monthly mortgage payment was applied to August 2022, which had been paid by the Chapter 13 Trustee.

18. Defendant Guaranteed Rate's January mortgage statement dated January 17, 2023, advised Plaintiff had a total payment due of $2,119.97, which included past due balances from September, October, November, December 2022, and January 2023.

19. Plaintiff continued to make the monthly mortgage payment at $435.25, every month. However, beginning in June 2023, the Defendants began returning the mortgage payments as insufficient to cure the default.  Plaintiffs have since made payments into a bank account in their own name because the Defendants will not accept the proper mortgage payment amount.

20. Plaintiff and his wife made multiple phone calls in an effort to try and resolve these issues.  Plaintiff's Bankruptcy counsel reached out on the Plaintiff's behalf.

21. Guaranteed Rate sent a Notice of Servicing Transfer to Plaintiff, dated February 14, 2023, advising that mortgage was being transferred from Guaranteed Rate, Inc. (by DMI) to Guaranteed Rate, Inc. c/o ServiceMac beginning with the March 2023, monthly mortgage payment.

22. In his continued effort to resolve these issues, Plaintiff mailed a certified letter on February 24, 2023, enclosing a Notice of Error to Guaranteed Rate to dispute the past due balance and requested: an investigation into the account, updated balances, all servicing notes, an itemized re-instatement quote, transaction codes and account related charges. Plaintiff included Guaranteed Rate's Response to Final Cure Payment, Chapter 13 Trustee's Final Report and Account showing all payments had been made and were current through September 2022, and copies of bank statements and cashier's checks showing payments to Guaranteed Rate from October 2022 through March 2023.

23. Defendant Guaranteed Rate sent a formal notice dated March 7, 2023, which advised Plaintiff was in default in the amount of $2,593.50 for unpaid balances from November 2022 through March 2023 with payment due by April 1, 2023.

24. Defendant Guaranteed Rate provided a Receipt of Inquiry dated March 8, 2023, and advised they were reviewing the account and would provide a response to the inquiry within the time limits required by law. Plaintiff did not receive any of the requested information from Guaranteed Rate which is in violation of 12 C.F.R. §§ 1024.36(a), 1024.36(d)(1)(i), 1024.36(d)(2)(b).

25. Defendant Guaranteed Rate sent a mortgage statement dated March 9, 2023, which advised Plaintiff had a total amount due of $2,984.47 to be paid by April 1, 2023.

26. Rather than respond to Plaintiff's qualified written request as they indicated they would in their March 8, 2023 response, Defendant Guaranteed Rate mailed a mortgaging servicing transfer dated March 10, 2023, transferring the servicing from Guaranteed Rate c/o Dovenmuehle to Guaranteed Rate c/o ServiceMac, LLC., advising that Plaintiff was to pay the new mortgaging servicer beginning with the March 01, 2023, mortgage payment, 10 days after the mortgage payment due date.

27. Plaintiff had sent the mortgage payment due March 1, 2023, payment to Guaranteed Rate c/o Dovenmuehle, prior to receipt of the mortgage transfer dated March 10, 2023. The March 2023 mortgage payment was sent back to Plaintiff. Plaintiff immediately submitted the March 2023 payment to Guaranteed Rate c/o ServiceMac, per attached cashier's checks via certified mail.

28. Defendant Guaranteed Rate sent another mortgage statement dated March 16, 2023, which advised Plaintiff owed a balance of $2,997.99 showing unpaid balances for October, November, December of 2022 and January, February, March of 2023.

29. Defendant Guaranteed Rate sent another mortgage statement dated March 17, 2023, which advised Plaintiff owed a balance of $2,133.49 showing unpaid balances for December of 2022 and January, February, March of 2023.

30. On March 31, 2023, Guaranteed Rate sent a statement of activity for Plaintiff's escrow account.

31. Defendant Guaranteed Rate mailed another mortgage statement dated April 13, 2023, advising Plaintiff owed a balance of $2, 153.49 for unpaid balances in January, February, March and April 2023.

32. Plaintiff made all payments from October 2022 through March 2023 per attached bank statements/cashier's checks. The Chapter 13 Bankruptcy Trustee made all payments through September 2022.

33. Defendant Guaranteed Rate mailed an Annual Escrow Account Disclosure Statement on April 12, 2023, advising a surplus of 163.01.

34. On April 17, 2023, Plaintiff sent a Second Notice of Error, Request for Information and Qualified Written Request to Guaranteed Rate, C/O ServiceMac to dispute the unpaid balances and requested an investigation into the account, and requested all servicing notes, an itemized re-instatement quote, transaction codes and account related charges. Defendant provided all incorrect statements and proof of payments with the account dispute.

35. Defendant Guaranteed Rate provided a Receipt of Inquiry dated May 9, 2023:

    > We have received your inquiry regarding your mortgage loan and are reviewing your account. We will make every effort to provide a response within the time limit required by law.
    > We value you as a customer and appreciate your patience while we prepare a response. If you have any questions, please call us at 1-866-397-7238.
    > Sincerely,
    > Research Department

36. Defendant Guaranteed Rate's mortgage statement dated May 16, 2023, advised Plaintiff of a total amount due of $2, 608.36 to be paid by June 1, 2023, with past due balances from January, February, March, April and May 2023.

37. On May 18, 2023, Guaranteed Rate sent a legally required notice advising that Plaintiff was behind on his mortgage payment for a total of 6 mortgage payments with total late charges, advances and other charges in the amount of $872.80 and sent paperwork advising possibilities to avoid foreclosure.

38. Defendant Guaranteed Rate's response dated June 13, 2023, to Plaintiff's FOI Request received on May 9, 2023, advised that after investigation no errors occurred, they were unable to provide any information due to the loan transfer on March 9, 2023, and reads as follows:

    Thank you for your correspondence that was received on May 9, 2023, where you raised the following issues:

    1. That you received a notice from Guaranteed Rate on March 17, 2023 advising that you are in default that you believe to be in error.
    2. That you requested all servicing notes, a reinstatement quote and transaction codes on February 24, 2023 but had not received them.
    3. That you believe that you have made all scheduled payments on your loan in a timely basis and do not believe you are in default.

    We have fully investigated these issues and determined that no action was required because no errors occurred.

    For your information, we have determined that no action on our part was required based upon the following:

    Regarding issue 1, as stated in our prior correspondence, the above loan service transferred to ServiceMac, LLC on March 2, 2023. Accordingly, we are unable to provide you with the information or documentation related to your payment history or notices of default you may have received previously. Further, we cannot speak to any notices that may or may not have been generated by the new servicer after the service transfer occurred.

39. Plaintiff requested records in a timely manner and Defendant Guaranteed Rate is required provide records for up to one year after transferring records to another mortgage servicer provider per 12 C.F.R. § 1024.36(f)(1)(iv).

40. Defendant Guaranteed Rate sent the June mortgage statement dated June 16, 2023, advising that Plaintiff owed $4,363.23, with past due balances for January, February, March, April, May and June 2023.

41. Defendant Guaranteed Rate returned check number 283308 for the June 2023 mortgage payment by letter dated June 21, 2023, advising not enough funds to cure delinquency.

42. Defendant Guaranteed Rate sent the August monthly mortgage statement dated July 17, 2023, advising that Plaintiff owed a total amount due of $4,818.10 for past due balances for February, March, April, May, June and July 2023.

43. On July 17, 2023, Plaintiff sent a third Notice of Error and Written Request for Information via certified mail to the address provided in the June 13, 2023 Response to the April 17, 2023 FOI Request, to dispute the unpaid balances, requested an investigation into the account, and requested all servicing notes, an itemized re-instatement quote, transaction codes and account related charges. Plaintiff again gathered all documents and included to provide proof of payment for the unapplied mortgage payments. The certified letter arrived on July 24, 2023, per USPS tracking information, and, upon information and belief, Defendant Guaranteed Rate has refused to accept the certified mailing.  In any event, they have never responded to this July 17, 2023 letter.

44. Defendant Guaranteed Rate sent a mortgage statement dated 07/17/2023 advising Plaintiff owed a total balance of $4,818.10 with past due balances from February 2023 through July 2023.

45. Defendant Guaranteed Rate, despite the multiple disputes and written qualified requests, and despite their complete failure to investigate in the first instance, failure to respond in the second instance, and failure to even accept receipt in the third instance, have hired a law firm to initiate foreclosure proceedings against Plaintiff.  Plaintiff received multiple letters from this law firm including a notice of a foreclosure sale.  This sale has since been cancelled by the law firm, however, the status of foreclosure proceedings is unknown to Plaintiff at this time.

46. Defendants are now sending "loss mitigation" paperwork to the Plaintiff.  This loss-mitigation procedure should have taken place prior to the scheduled foreclosure sale that has since been cancelled.

47. Defendants are moving again toward foreclosure and, as a result of their not applying payments properly, and then refusing to accept payments at all, have resulted in the Plaintiff's Homeowner's Insurance coverage lapsing.

48. Defendants Guaranteed Rate and ServiceMac continue to report derogatory information concerning the mortgage account to Equifax, Experian, and TransUnion Credit Reporting Agencies. This includes a comment that appears on Plaintiff's Equifax Credit Report that "Foreclosure process started." Comment is dated April of 2023. This was within the 60-day period of prohibition provided by 12 U.S.C. § 2605(e)(3). Defendants acknowledge receipt of Plaintiff's first qualified written request on March 8, 2023, but then report the account as past due and "foreclosure process started" in April of 2023. Defendants also reported past due amounts to Equifax in May and June of 2023 despite acknowledging receipt of Plaintiff's second qualified written request on May 9, 2023.

49. Upon information and belief, the Defendants have engaged in a pattern of practice of noncompliance with RESPA as demonstrated by their multiple and continued failures to comply in this case, and their blatant disregard of the law by refusing to respond to requests, or even accept receipt of the final written qualified request sent by Plaintiff. This pattern and practice of noncompliance is further evidenced by the Defendants' blatant disregard of the prohibition of reporting negatively on Plaintiff's credit report.

## COUNTS I THROUGH III – MULTIPLE VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. §2605(e)(1)

50. 12 U.S.C. §2605(e)(1) provides: "If any servicer of a federally related mortgage loan received a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days."

51. COUNT 1 – Defendants failure to respond timely to Plaintiff's first qualified written request to acknowledge receipt of that request is a violation of this provision.

52. COUNT 2 – Defendants failure to respond timely to Plaintiff's second qualified written request to acknowledge receipt of that request.

53. COUNT 3 – Defendants refusal to accept receipt and/or respond to Plaintiff's third qualified written request is a violation of this provision.

54. As a result of these multiple violations, Plaintiff is entitled to actual damages and statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(A) and (B), as to each violation, and costs and attorney's fees pursuant to 12 U.S.C. §2605(f)(3).

## COUNTS IV – THROUGH IX – MULTIPLE VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. §2605(e)(2)

55. 12 U.S.C. §2605(e)(2) provides:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

56. COUNTS IV, V and VI – Defendants violated 12 U.S.C. § 2605(e)(2)(A) by not making appropriate corrections to the mortgage account when they were provided with perfect

information to correct their mistake.  They violated this provision as to all three (3) qualified written requests sent by Plaintiff.

57. COUNTS VII, VIII, and IX – Defendants violated 12 U.S.C. § 2605(e)(2) by their failure to respond within 30 days to Plaintiff's second qualified written request and by their failure to even accept receipt of Plaintiff's third qualified written request.  They violated this provision as to all three (3) qualified written requests sent by Plaintiff.  While they responded to Plaintiff's May 9, 2023, written request, their response was in violation of regulations that require them to keep servicing records for up to one year.  The claim by Defendant Guaranteed Rate that they do not have the servicing records is spurious as the statements sent to Plaintiff this entire time come from Defendant Guaranteed Rate.  In any event, this response was also not timely.  Also, in the event the Defendant responds that they no longer have the records in their possession and thus cannot respond, they are required to provide "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."  12 U.S.C. § 2605(e)(2)(C)(2).  This information was not provided.

58. As a result of these multiple violations, Plaintiff is entitled to actual damages and statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(A) and (B), as to each violation, and costs and attorney's fees pursuant to 12 U.S.C. §2605(f)(3).

## COUNTS X – AND XI – VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. §2605(e)(3)

59.  12 U.S.C. § 2605(e)(3), titled "Protection of Credit Rating", provides:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

60. Defendants Guaranteed Rate and ServiceMac have, on at least two (2) occasions, violated 12 U.S.C. § 2605(e)(3) by continuing to report the mortgage account as past due and "foreclosure process started" to Equifax, Experian and TransUnion Credit Reporting Agencies during the 60-day period of prohibition provided by § 2605(e)(3).

61. As a result of these multiple violations, Plaintiff is entitled to actual damages and statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(A) and (B), as to each violation, and costs and attorney's fees pursuant to 12 U.S.C. §2605(f)(3).

## PENDENT STATE LAW CLAIMS
## COUNT XII: BREACH OF CONTRACT

62. Plaintiff realleges and incorporates the factual allegations as if fully set out herein.

63. Defendant Guaranteed Rate breached the mortgage contract by refusing to properly apply payments, refusing to accept payments, and initiating foreclosure proceedings against Plaintiff by either negligently or fraudulently creating erroneous past due amounts and then refusing to accept payments that did not include those erroneous past due amounts.

64. As a direct and proximate result of the Defendant's breach of the contract, Plaintiff has incurred actual damages, including but not limited to: the accrual of default servicing fees and foreclosures fees; embarrassment, damage to his credit, unnecessary anxiety; emotional distress and mental anguish; credit damage; and is threatened with additional harm from Defendant's breach in the form of foreclosure on his residential home.

65. The actions of Guaranteed Rate have been willful and wanton such as to warrant punitive damages in an amount to be determined by a jury.

## COUNT XIII: BREACH OF THE CONTRACT BY BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

66. Plaintiff realleges and incorporates the factual allegations as if fully set out herein.

67. A covenant of good faith and fair dealing exists in every valid Virginia contract, including notes and deeds of trust pertaining to real property such as the note and deed of trust pertaining to Plaintiff's property.  A breach of covenant of good faith and fair dealing is a breach of the underlying contract.

68. Guaranteed Rate failed to perform its duty of good faith and fair dealing with respect to the Plaintiff by: failing to abide by the terms of the Note and Deed of Trust that govern the original loan; misapplying and refusing to apply payments; and initiating foreclosure proceedings based upon their own mistakes and continued refusal to accept payments.

69. Because of its breach of the implied covenant of good faith and fair dealing, Guaranteed Rate is not entitled to exercise its remedy of foreclosure under the Deed of Trust.

70. Guaranteed Rate's actions in breaching the contract by its breach of the implied covenant of good faith and fair dealing, misapplying, or not applying payments, and refusing to

comply with three (3) qualified written requests and properly investigate the account. Plaintiff included all necessary documents with three (3) qualified written requests showing payments were current but Guaranteed Rate still initiated foreclosure proceedings, which constitute a willful and wanton disregard for the rights of the Plaintiff.

71. Plaintiff also suffered actual damages including but not limited to: the accrual of default servicing fees and foreclosure fees; the embarrassment of multiple foreclosure advertisements; having to seek out counsel; unnecessary anxiety; emotional distress and mental anguish; and is threatened with additional harm from Defendant's breach.

72. The actions of Guaranteed Rate have been willful and wanton, such as to warrant punitive damages in an amount to be determined by a jury.

## COUNTS XIV and XV: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

73. 15 U.S.C. § 1692e(a)(8) provides:

    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

74. 15 U.S.C. § 1692f provides in relevant portion:

    A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

75. COUNT XIV - By communicating credit information to the three major credit bureaus indicating that the Plaintiff is past due or in foreclosure, and not noting that this information is in dispute by Plaintiff, Defendant ServiceMac and Defendant Dovenmuehle have violated 15 U.S.C. § 1692e(2)(8)

76. COUNT XV - By attempting to collect amounts that were already paid through the Plaintiff's Chapter 13 Bankruptcy, Defendants ServiceMac and Dovenmuehle have violated 15 U.S.C. § 1692f(1).

## DAMAGES

77. The Defendant has violated RESPA in multiple respects and, as a result, Plaintiff has suffered actual damages in the form of extreme emotional distress and mental anguish, damage to his credit, and other out-of-pocket expenses associated with the dispute process, including but not limited to lost wages.  In addition, Plaintiff is seeking statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), in the amount of $2,000 for each RESPA violation alleged.  In addition, Plaintiff is seeking actual damages and punitive damages for Defendant's breach of contract in the amount of $300,000.  Finally, Plaintiff is entitled to recovery of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendants ServiceMac and Dovenmuehle.

## DEMAND FOR TRIAL BY JURY

78. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests this Court:

- Assume jurisdiction over this action;
- Award actual and statutory damages, including those for emotional distress and mental anguish, in an amount to be determined by a jury;
- Declare that Defendants violated RESPA, enjoin Defendants from committing any future violations of the Act, and award the Plaintiff actual damages, and award Plaintiff $2,000 in statutory damages pursuant to 12 U.S.C. §2605(f) for each violation committed.
- Declare that Defendants violated the FDCPA and award the Plaintiff actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury and statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00.
- Award Plaintiff's reasonable attorneys' fees and costs pursuant to 12 U.S.C. §2605(f)(3) and 15 U.S.C. §1692k(a)(3).
- Award actual damages, punitive damages, and costs and attorneys' fees for breach of contract under Virginia law in an amount to be determined at trial.

- Grant such other or further relief as is appropriate.

Respectfully submitted,

RICHARD OWENS


/s/Matthew Felty_____
Matthew L. Felty, Esq.
Virginia State Bar ID # 74873
Attorney for Plaintiff
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660
mfelty@feltylawfirm.com